**Kenneth WHITE, Appellant,**

v.

**James P. BOYLE et al., Appellees.**

**No. 75–1491.**

United States Court of Appeals,
Fourth Circuit.

Argued June 7, 1976.

Decided Aug. 10, 1976.

Kenneth White, pro se.

Michael J. Roach, Atty., Tax Div., Dept. of Justice (Scott P. Crampton, Asst. Atty.

Gen., Jonathan S. Cohen, Gilbert E. Andrews, Attys., Tax Div., Dept. of Justice, Washington, D. C., and Paul R. Thomson, Jr., U. S. Atty., Roanoke, Va., on brief), for appellees.

Before CRAVEN, RUSSELL and WIDENER, Circuit Judges.

CRAVEN, Circuit Judge:

Kenneth White, president of the Virginia Taxpayers Association, instituted a civil rights action in the district court against the district director and various agents of the Internal Revenue Service. In his official capacity, and as a concerned citizen, White had occasion to address legislative panels and to release statements to the press; his public stance consistently attacked government spending habits and urged modification of the revenue-collecting system. White maintained that as a result of his outspoken opposition to the present taxing structure, he was designated a "sensitive case" and a "high deterrent case," and was thereafter made an object of retaliatory investigatory procedures aimed at harassment and the abridgment of his constitutionally protected rights. Features of this program of harassment, he claimed, included a trespass onto and destruction of White's property by IRS agents as well as illegal investigation into White's bank accounts. White's complaint set forth three counts, each seeking $75,000 compensatory and $200,000 punitive damage as well as an injunction against further unconstitutional activity.

Having moved for summary judgment, the several defendants submitted affidavits which stated that an investigation was routinely initiated when it became apparent that the Form 1040 filed by White and his wife pertaining to their 1972 federal income tax liability was unsigned, contained no information from which a computation of tax liability could be derived, and had written across its face "filed under protest."[1] The

---

1. Attached to White's 1972 income tax form was a seven-page statement which set out his

belief that the 1040 Form, the Internal Revenue Code, and/or the Internal Revenue Service

inquiry, begun after referral from the Memphis Service Center, was aimed at determining whether White had violated any laws pertaining to the collection of revenues.

On the basis of these affidavits, the district court found that the actions of the defendants were made pursuant to federal law, were within the scope of their authority, and were reasonable, good faith actions taken in response to White's defective 1972 return. As a result, the district judge determined that the defendants enjoyed official immunity, and, accordingly, granted summary judgment in their favor. In addition, that portion of the complaint seeking injunctive relief was dismissed because the court was without power to entertain the suit. *See White v. Boyle,* 390 F.Supp. 514 (W.D.Va.1975).

■ Clearly, if White can demonstrate an injury consequent upon the violation by federal agents of his constitutionally protected rights, absent official immunity, he is entitled to recovery. *Bivens v. Six Unknown Federal Narcotics Agents,* 403 U.S. 388, 397, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). However, White has failed to make any such showing beyond mere conclusory allegations, and the grant of summary judgment for the defendants was clearly proper.

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Rule 56(e), Fed.R.Civ.P. " '[T]o resist a motion for summary judgment, the party against whom it is sought must present some evidence to indicate that the facts are in dispute . . .. His bare contention that the issue is disputable will not suffice.' " *Berry v. Atlantic Coast Line R. R. Co.,* 273 F.2d 572, 582 (4th Cir. 1960), *cert. denied,* 362 U.S. 976, 80 S.Ct. 1060, 4 L.Ed.2d 1011 (1960), (quoting *Zoby v. American Fidelity Co.,* 242 F.2d 76, 80 (4th Cir. 1957)).

■ White failed to carry the burden of showing that there is present here any genuine issue of material fact. There is no evidence of the existence of any fact which, when viewed in a light most favorable to the plaintiff, will support the contention that the defendants invaded any right of the plaintiff secured by the Constitution.

White's complaint alleged a retaliatory Internal Revenue investigation initiated in response to his exercise of First Amendment rights. The defendants in their affidavits stated that their actions were taken pursuant to federal law (specifically 26 U.S.C. §§ 6201, 7601–7605, 7622) upon receipt by them of a return which did not adequately reflect his income tax liability for the year 1972. Additionally, the Internal Revenue Service's inspection of White's bank accounts, it was asserted, was performed pursuant to similarly lawful authority. At this point in the development of the pleadings, White was under the duty to present to the court some facts which would put into dispute the motivation behind the

---

were in violation of the First, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, and Fourteenth Amendments to the Constitution. White's statement began with the following introductory paragraphs:

So that there is no misunderstanding, I am not refusing to pay a lawful income tax, lawfully determined by regular judgment according to the procedures of due process of law before a court which is part of the Judicial Branch of the Government of the United States.

I am filing this Form 1040 U. S. Individual Income Tax Return for the year in question, with explanation appended, but I do not wish to incriminate myself or go along with any subversion or overthrow of the Constitution of the United States.

I do not think it is possible under the law for me to supply the information in the manner that is requested in Form 1040 for the year in question.

IRS action. Instead, he chose to file similarly conclusory counter-affidavits which reiterated his view that the IRS's activities were patently recriminatory. Nothing factual was offered to support his assertion of illicit motive on the part of federal officers.

Similarly, White's affidavits do not reveal any "right" which the agents in this case violated. He failed to show how the initiation of the investigation was unwarranted in view of the nature of his 1972 tax return, which contained no information from which tax liability could be computed, or that the investigation was conducted so as to violate any of his rights. His allegations that he was not treated as the normal "Fifth Amendment Tax Protestor," even if assumed to be accurate,[2] do not demonstrate any violation of rights—only that the investigation was conducted under different procedures—and his claim that his Fourth Amendment rights were violated by a search of his house and his car rest entirely upon conjecture[3] and are without sufficient factual support to withstand the agents' specific denial that any search whatsoever was conducted.

Thus, both as to the government's motivation in initiating its investigation of him and as to that investigation's violation of his constitutional rights, we believe White failed to meet the burden of Fed.R.Civ.P. 56(e), and since no genuine issue of material fact remained, summary judgment was properly granted against him.

Furthermore, even if White had demonstrated the existence of a genuine issue of material fact, we believe that the district court correctly determined that defendants were protected from liability by official immunity. The district court found that "the actions of defendants Higginbotham and Moore in going to plaintiff's home and leaving a note . . . as being *reasonable, good faith efforts* taken in response to plaintiff's 1972 tax return. . . . " Under these findings, which are uncontradicted except for White's conclusory allegations, defendants are clearly protected from civil liability by qualified, good-faith immunity. *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975). *See also Economou v. Dept. of Agriculture,* 535 F.2d 688, 44 U.S.L.W. 2516 (2d Cir. 1976).

Dismissal of the complaint insofar as it requested injunctive relief was also proper, whether White sought to restrain the collection of taxes, *see* 26 U.S.C. § 7421(a), or to restrain an investigation of his tax liability, *see Brittingham v. Commissioner of Internal Revenue,* 451 F.2d 315 (5th Cir. 1971). *See also United States v. Miller,* —— U.S. ——, 96 S.Ct. 1619, 48 L.Ed.2d 71, 44 U.S. L.W. 4528 (1976).

Accordingly, the judgment of the district court is affirmed.

*Affirmed.*

---

**2.** White's allegation that he was treated differently than other "Fifth Amendment Tax Protestors" is based on an Internal Management Document from the office of the IRS's Western Region Commissioner, which sets out procedures for initiating contact with such individuals. We are told, however, by the government that no such guidelines for the Southeastern Region existed at the time White's 1972 tax return was filed and were not promulgated until 1974.

**3.** White alleges that the IRS agents conducted a "search" of his home by looking through its open windows as they walked around the house to knock on a rear door and that they must have searched his car since subsequent to their visit he found the car's glove compartment standing open. But there is no proof. Neither White nor anyone else was at White's home at the time the agents visited it.